**Scott E. Davis,** OSB #022883
Email:  scott.davis@klarquist.com
KLARQUIST SPARKMAN, LLP
121 SW Salmon Street, Suite 1600
Portland, OR  97204
Telephone:  503-595-5300
Facsimile:  503-595-5301

*Attorneys for Defendant/Counter-Plaintiff*
*GoldToeMoretz, LLC*


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| **COLUMBIA SPORTSWEAR COMPANY, COLUMBIA SPORTSWEAR NORTH AMERICA, INC.,** and **COLUMBIA SPORTSWEAR USA CORPORATION,**<br><br>                    Plaintiffs,<br><br>        v.<br><br>**GOLDTOEMORETZ, LLC,** a Delaware limited liability company,<br><br>                    Defendant. | Case No. 11-cv-181-MO<br><br><br>**MEMORANDUM IN SUPPORT OF GOLDTOEMORETZ, LLC'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**REQUEST FOR ORAL ARGUMENT** |
| **GOLDTOEMORETZ, LLC,**<br><br>                    Counter-Plaintiff,<br><br>        v.<br><br>**COLUMBIA SPORTSWEAR COMPANY,**<br><br>                    Counter-Defendant. | |

## TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ...................................................................................................2

    A.    Rights and Activities of GTM .............................................................................2

    B.    Columbia's Unlawful Activities ...........................................................................4

ARGUMENT ....................................................................................................................5

    A.    GTM Is Likely to Succeed on the Merits of Its
            Federal Trademark Infringement and Unfair Competition Claims.........................6

         1.    GTM's 3 Triangles Mark Is Valid and Protectable .....................................7

         2.    The *Sleekcraft* Factors Compel a Finding of
                Likelihood of Confusion ..........................................................................8

               a.    The Parties' Marks Are Highly Similar ...........................................9

               b.    GTM and Columbia Sell Competitive Goods...............................11

               c.    The Parties' Products Are Marketed
                      Through Identical Channels to Identical Customers.....................12

               d.    GTM's 3 Triangles Mark Is a Strong, Distinctive Mark ..............13

                e.    Columbia Traded On GTM's
                      Goodwill in the 3 Triangles Mark..................................................15

                f.    Evidence of Actual Confusion Is Not Required
                      for GTM to Prevail on Its Trademark Claims...............................16

                g.    Consumers Exercise a Low Degree of Care
                      When Purchasing Inexpensive Items Such As Socks ..................17

                h.    The Likelihood of Expansion into Other
                      Markets Has Already Occurred ....................................................18

    B.    GTM Is Also Likely to Succeed on the Merits of Its
            Statutory and Common Law Unfair Competition Claims .....................................19

C.      GTM Will Suffer Irreparable Harm
        If the Injunction Is Not Granted.........................................................................19

D.      The Balance of Hardships Tips Decidedly in Favor of GTM...............................20

E.      The Public Interest Is Served By Granting the Injunction...................................22

CONCLUSION...............................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*ACI Int'l, Inc. v. adidas-Solomon AG,*
    359 F. Supp. 2d 918 (C.D. Cal. 2005) ........................................................................10, 13

*adidas-Solomon AG v. Target Corp.,*
    228 F. Supp. 2d 1192 (D. Or. 2002) ..................................................................................11

*AMF Inc. v Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979) ..................................................................................6, 8, 16, 18

*adidas America, Inc. v. Payless Shoesource, Inc.,*
    546 F. Supp. 2d 1029 (D. Ore. 2008)........................................................................... passim

*ASCICS Corp. v. Wanted Shoes, Inc.,*
    2005 U.S. Dist. LEXIS 17187 (C.D. Cal. Jan. 25, 2005) ...................................................22

*Brookfield Commc'n, Inc. v. West Coast Entm't Corp.,*
    174 F.3d 1036 (9th Cir. 1999) ...........................................................................6, 7, 8, 11, 12, 16

*Century 21 Real Estate Corp. v. Sandlin,*
    846 F.2d 1175 (9th Cir. 1988) ............................................................................... 10-11, 8, 20

*Cleary v. News Corp.,*
    30 F. 3d 1255 (9th Cir. 1994) ............................................................................................18

*Committee for Idaho's High Desert, Inc. v. Yost,*
    92 F.3d 814 (9th Cir. 1996) ...............................................................................................15

*Dr. Seuss Enter., L.P. v. Penguin Books USA, Inc.,*
    109 F.3d 1394 (9th Cir. 1997) ..............................................................................................8

*Dreamworks Prod. Group, Inc. v. SKG Studio,*
    142 F.3d 1127 (9th Cir. 1998) ..............................................................................................7

*E & J Gallo Winery v. Gallo Cattle Co.,*
    967 F.2d 1280 (9th Cir. 1992) ......................................................................................11, 16

*Edge Wireless, LLC v. United States Cellular Corp.,*
    312 F. Supp. 2d 1325 (D. Or. 2003) ...................................................................6, 10, 18, 20

*El Pollo Loco, Inc. v. Hashim,*
    316 F. 3d 1032 (9th Cir. 2003) ...........................................................................................19

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) ........................................................8-9, 14-15, 18

*GoTo.com Inc. v. Walt Disney Co.*,
  202 F. 3d 1199 (9th Cir. 2000) ..........................................................6, 10, 14, 17

*Grocery Outlet, Inc. v. Albertson's Inc.*,
  497 F.3d 949 (9th Cir. 2007) .....................................................................................6

*Gucci Am., Inc. v. Action Activewear, Inc.*,
  759 F. Supp. 1060 (S.D.N.Y. 1991)..................................................................17

*Guess?, Inc. v. Tres Hermanos*,
  993 F. Supp. 1277 (C.D. Cal. 1997) ................................................................15

*Hansen Beverage Co. v. Cytosport, Inc.*,
  2009 U.S. Dist. LEXIS 120508 (C.D. Cal. Nov. 4, 2009)...................................16

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
  408 F.3d 596 (9th Cir. 2005) ...............................................................................7

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F. 3d 894 (9th Cir. 2002) ............................................................................22

*McNeil-PPC v. Granutec, Inc.*,
  919 F. Supp. 198 (E.D.N.C. 1995)..............................................................19, 21

*Moose Creek, Inc. v. Abercrombie & Fitch Co. et al.*,
  331 F. Supp. 2d 1214 (C.D. Cal. 2004) ........................................................11, 12

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
  22 F.3d 546 (4th Cir. 1994) ...............................................................................20

*Nabisco Brands, Inc. v. Conusa Corp.*,
  1989 WL 152508 (4th Cir. Dec. 1, 1989) ..........................................................19

*Pacific Intern. Rice Mills, Inc. v. Rice Growers Ass'n of CA*,
  1989 U.S. Dist. LEXIS 16953 (E.D. Cal. June 14, 1989).....................................21

*Payless v. Reebok*,
  998 F.2d 985 (Fed. Cir. 1993)...........................................................................13

*Playmakers, LLC v. ESPN, Inc.*,
  297 F. Supp. 2d 1277 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004)...................10

*Polo Fashions, Inc. v. Craftex, Inc.*,
  816 F.2d 145 (4th Cir. 1987) .............................................................................18

*Saks & Co. v. Hill*,
    843 F. Supp. 620 (S.D. Cal. 1993) ........................................................................11

*Sardi's Rest. Corp. v. Sardie*,
    755 F.2d 719 (9th Cir. 1985) ............................................................................6, 20

*Starbucks Corp. v. Lundberg*,
    2005 U.S. Dist. LEXIS 32660 (D. Or. Nov. 29, 2005)........................7, 8, 11, 16, 17

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ..................................................................................6

*TM Computer Consulting, Inc. v. Apothacare, LLC*,
    2008 U.S. Dist. LEXIS 69284 (D. Or. Sept. 11, 2008).........................14, 19, 20, 21

*Top Producer Sys. v. Software Sciences*,
    1997 U.S. Dist. LEXIS 12369 (D. Or. June 2, 1997) .......................................16, 19

*Triad Sys. Corp. v. Southeastern Export Co.*,
    64 F. 3d 1330 (9th Cir. 1995) ...............................................................................21

**STATUTES**

Lanham Act.................................................................................................... passim

Defendant/Counterclaim-Plaintiff GoldToeMoretz, LLC ("GTM") hereby submits its memorandum in support of its motion for a preliminary injunction against Plaintiff/Counterclaim-Defendant Columbia Sportswear Company ("Columbia").  Since at least as early as 1979, GTM and its predecessors have manufactured and sold socks and other clothing goods nationwide under various trademarks, including its three triangles trademark shown below (the "3 Triangle Mark") and made the subject of U.S. Trademark Registration No. 2,954,083.



Notwithstanding the value inherent in GTM's 3 Triangles Mark, Columbia has promoted, advertised, sold and/or offered for sale socks bearing a design that is confusingly similar to GTM's 3 Triangles Mark.  Whether or not Columbia's imitation was willful, its actions constitute infringement of the proprietary rights of GTM in the 3 Triangles Mark and continued despite Columbia's actual knowledge that the use of such proprietary mark, or any colorable imitation thereof, was and remains in direct contravention of the exclusive proprietary rights of GTM.

Columbia's actions have irreparably damaged GTM's goodwill represented by its 3 Triangles Mark, and every day that Columbia infringes the 3 Triangles Mark and Columbia's infringing goods are sold, GTM is suffering irreparable harm to its right in the 3 Triangles Mark as a single source identifier.  Accordingly, GTM respectfully requests that the Court preliminarily enjoin Columbia, and others subject to the injunction, from infringing GTM's rights in the 3 Triangles Mark.

## STATEMENT OF FACTS

### A.    Rights and Activities of GTM

GTM is a well-known manufacturer and marketer of socks and other clothing and related goods.  As reflected on its websites (www.GoldToeMoretz.com and www.GoldToe.com), GTM markets its socks nationwide under various proprietary and licensed trademarks.  *See* Declaration of John M. Moretz ("Moretz Decl."), ¶ 3.  GTM's socks and other products are sold, *inter alia*, in stores such as J.C. Penney, Dick's Sporting Goods, Macy's, Kohls, The Sports Authority, Famous Footwear, Hibbetts, TJ Maxx, Rack Room Shoes, Big Five Sporting Goods, Shoe Show, Boscov's and in hundreds of independent retailers.  *Id.* at ¶ 4.  GTM's products are also offered for sale on numerous Internet websites, including Amazon.com.  *Id.*

To promote its socks and other clothing products, GTM has advertised to the public the availability of those products.  GTM's products have been advertised in many forms of media, including television (such as on ESPN/ESPN2), trade magazines (such as *Sportstyle*), consumer magazines (such as *Runners World*, *Trail Runner*, and *Rock-N-Ice*), programs for major professional sporting events (such as the National Football League Carolina Panthers and New Orleans Saints gameday programs), other advertisements at major sporting events (such as on the Panther Vision screen at Carolina Panthers games), and through the Internet (on websites such as www.moretzsports.com, www.powersox.com, and www.sockcompany.com).  *Id.* at ¶ 5.

Additionally, GTM has obtained and used in recent years the endorsements of the following official GTM spokespersons:  Danielle Ammaccapane, LPGA touring pro; Tim Green, national aerobics champion; Kathy Ireland, lifestyle designer and fitness advocate; NFL greats Ronnie Lott and John Elway; Frank Shorter, Olympic marathon gold medalist; and Dave Hahn,

professional mountain guide.  Additionally, GTM holds prestigious and exclusive licenses from such companies as Under Armour and New Balance.  *Id.* at ¶ 6.

Since at least as early as 1979, GTM (through, in part, its predecessors) has been using the 3 Triangles Mark as a unitary trademark, *i.e.*, without being combined with any text or other device, on socks and other clothing goods and their packaging materials.  *Id.* at ¶ 8, Ex. A.  The 3 Triangles Mark is the subject of U.S. Trademark Registration No. 2,954,083, which registration (the "3 Triangles Trademark Registration") issued May 24, 2005, and like the 3 Triangles Mark itself, is owned by GTM.  *Id.* at ¶ 9, Ex. B.  Examples of GTM's socks bearing the 3 Triangles Mark are depicted below.



As a consequence of the longstanding and continuous use of the 3 Triangles Mark by GTM and its predecessors, GTM products and the 3 Triangles Mark have become closely associated with one another in the mind of the public so that the public has come to recognize the business and goods of GTM, at least in part, by the distinctive 3 Triangles Mark.  In fact, for decades, GTM has enjoyed substantial goodwill and a valuable reputation under the 3 Triangles Mark.  *Id.* at ¶ 10.  As well, over the last six years, GTM has expended over $4.1 million in advertising in promoting the sale of its goods bearing the 3 Triangles Mark.  *Id.* at ¶ 11.  Further, the 3 Triangles Mark has a distinctive quality and has acquired special and particular significance and very valuable goodwill as identifying GTM and its socks and other clothing and related

goods so that when members of the public see this mark, particularly in the context of socks and other clothing goods, they think of GTM.

**B.    Columbia's Unlawful Activities**

Columbia (directly and/or through its subsidiaries) designs, sources, and sells, *inter alia*, socks and other clothing goods throughout the United States in over 2,000 retail stores, including Dick's Sporting Goods and The Sports Authority.  Complaint, ¶ 9; Declaration of Theresa Conduah, Esq. ("Conduah Decl.") ¶ 5, Ex. 2.  Columbia also advertises and sells its goods on numerous Internet websites, including Amazon.com.  Conduah Decl. ¶ 6, Ex. 3.

GTM recently learned that Columbia was advertising, promoting, offering for sale and selling to wholesalers, retailers and/or to the public socks bearing a design confusingly similar to the 3 Triangles Mark (the "Infringing 3 Triangles Designation").  An example of Columbia's infringing sock products (the "Infringing Sock Product") is depicted below.



*See* Conduah Decl. ¶ 4, Ex. 1.[1]  On Internet websites offering Columbia's Infringing Sock Product for sale, the product is displayed in the manner reflected above, *i.e.*, outside the packaging with the Infringing 3 Triangles Designation clearly and prominently visible to the consumer.  *Id.* at ¶ 7, Ex. 4.  Columbia introduced its Infringing Sock Product to the market recently in 2010.  Complaint, ¶ 10.  GTM has not authorized Columbia to use its proprietary 3

---

[1] As of the filing of this Motion, the Infringing Sock Product was no longer displayed on the Columbia website available at www.columbia.com.

Triangles Mark, or any colorable variation thereof, including any such use in connection with socks. Moretz Decl. at ¶ 12.

On January 15, 2011, GTM's outside counsel, Larry C. Jones of Alston & Bird LLP, sent to Columbia a letter notifying Columbia of GTM's awareness of Columbia's unlawful activities, demanding that such activities cease, and demanding that Columbia provide certain information and materials pertaining to Columbia's sales of the subject goods. Conduah Decl. ¶ 8. Rather than providing the requested materials and information, Columbia filed this declaratory judgment lawsuit.[2]

The activities of Columbia constitute infringement of the proprietary rights of GTM in the 3 Triangles Mark and continued after Columbia's actual knowledge that the use of such proprietary mark, or any colorable imitation thereof, was and remains in direct contravention of the exclusive proprietary rights of GTM. Columbia's unlawful activity results in a likelihood of consumer confusion and irreparable harm and injury to GTM and its legitimate trademark rights. GTM has suffered and will suffer irreparable injury to those interests until Columbia is enjoined from wrongfully infringing GTM's 3 Triangles Mark.

## ARGUMENT

Under the Ninth Circuit's longstanding standard for granting a preliminary injunction, the moving party must show either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and

---

[2] In its Complaint, Columbia attempts to divert the Court's attention from GTM's *trademark* infringement claims by recharacterizing them as a product configuration *trade dress* case. GTM's claims are not product configuration trade dress claims, and GTM has not asserted trade dress claims against Columbia. Curiously, Columbia further alleges that GTM's 3 Triangles Mark is aesthetically functional and lacks secondary meaning, a defense that "has been limited, if not rejected," by the Ninth Circuit and this Court. *See adidas America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp.2d 1029, 1083 (D. Or. 2008). These allegations and defenses are merely red herrings to distract the Court's attention from Columbia's infringing conduct.

MEMORANDUM IN SUPPORT OF GOLDTOEMORETZ, LLC'S
MOTION FOR PRELIMINARY INJUNCTION
Page 5

a balance of hardships tipping sharply in favor of the moving party. *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985); *see also Grocery Outlet, Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007); *Edge Wireless, LLC v. United States Cellular Corp.*, 312 F. Supp. 2d 1325, 1329 (D. Or. 2003). While stated as alternatives, "these formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases." *Edge Wireless*, 312 F. Supp. 2d at 1329; *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839-840 (9th Cir. 2001) (preliminary injunction standards "are not separate tests but the outer reaches of a single continuum"). In any case alleging trademark infringement, irreparable injury generally may be presumed upon a showing of likelihood of consumer confusion. *See GoTo.com Inc. v. Walt Disney Co.*, 202 F. 3d 1199, 1209 (9th Cir. 2000); *Brookfield Commc'n, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1066 (9th Cir. 1999); *Edge Wireless*, 312 F. Supp. 2d at 1329.

As demonstrated below, the facts of this case easily satisfy the Ninth Circuit's standard for granting preliminary injunctions. Therefore, GTM is entitled to an order preliminarily enjoining Columbia from continuing to infringe GTM's 3 Triangles Mark.

## A.     GTM Is Likely to Succeed on the Merits of Its Federal Trademark Infringement and Unfair Competition Claims.

GTM seeks a preliminary injunction against Columbia for, *inter alia*, trademark infringement and false designation of origin under the Lanham Act. To prevail on its Lanham Act claims, GTM must establish: (1) it has a valid protectable mark and (2) there is a likelihood of confusion as to the origin of Columbia's Infringing Sock Product. *Brookfield*, 174 F.3d at 1046; *AMF Inc. v Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). In the Ninth Circuit, neither an intent to confuse nor actual confusion is a required element of a trademark infringement claim. *See  adidas America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029,

1051 (D. Or. 2008) (citing *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1256 n.16 (9th Cir. 1982)); *Brookfield*, 174 F.3d at 1050. Instead, the central inquiry is whether a "reasonably prudent customer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks" because of the similarities between the two marks. *adidas v. Payless*, 546 F. Supp. 2d at 1051-52; *Dreamworks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

Additionally, the likelihood of confusion that gives rise to trademark infringement liability need not involve the source or origin of the goods at issue. Under Section 43(a) of the Lanham Act, trademark infringement also occurs if the average purchaser would be likely to believe that the infringer's product has some commercial relationship or affiliation with the trademark owner. *See Starbucks Corp. v. Lundberg*, 2005 U.S. Dist. LEXIS 32660, at *25 (D. Or. Nov. 29, 2005). Likelihood of confusion is established "when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Id.*

### 1.     GTM's 3 Triangles Mark Is Valid and Protectable.

GTM holds a valid, protectable interest in the use of the 3 Triangles Mark. The 3 Triangles Mark is the subject of U.S. Reg. No. 2,954,083, which registration issued May 24, 2005. Registration of a mark on the Principal Register in the U.S. Patent and Trademark Office "constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Brookfield*, 174 F.3d at 1047 (citing 15 U.S.C. §§ 1057(b) and 1115(a)); *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005) ("Federal registration of a trademark endows it with a strong presumption of validity.") (citation omitted);

*Starbucks*, 2005 U.S. Dist. LEXIS 32660 at *23 (same).  There is no question that GTM's 3 Triangles Mark is entitled to considerable trademark protection.

      **2.**    **The *Sleekcraft* Factors Compel a Finding of Likelihood of Confusion.**

      A likelihood of confusion need not exist at the time a consumer makes a purchase decision.  Infringement occurs even if the likelihood of confusion (i) terminates before a sale is made ("initial interest confusion") or (ii) occurs after the purchase is made ("post-sale confusion").  *See adidas*, 546 F. Supp. 2d at 1058.  In particular, the Ninth Circuit has explicitly recognized that the use of another's trademark in a manner calculated "to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may still be an infringement." *Dr. Seuss Enter., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1405 (9th Cir. 1997); *see also adidas*, 546 F. Supp. 2d at 1058.  Likewise, the law in the Ninth Circuit is clear that post-sale confusion, *i.e.*, "confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased can establish the required likelihood of confusion under the Lanham Act."  *adidas*, 546 F. Supp. 2d at 1058 (quoting *Karl Storz Endoscopy Am., Inc. v. Surgical Tech., Inc.*, 285 F.3d 848, 854 (9th Cir. 2001)).

      In the Ninth Circuit, courts examine the following eight factors in evaluating the likelihood of confusion: (1) the similarity of the marks; (2) the relatedness of the parties' goods; (3) the similarity of trade or marketing channels; (4) the strength of the claimant's mark; (5) the intent of the accused infringer; (6) evidence of actual confusion; (7) the degree of care exercised by the average purchaser; and (8) the likelihood of expansion into other markets. *Sleekcraft*, 599 F.2d at 348-49.  The *Sleekcraft* factors are intended to provide guidance rather than dictate a particular result, and the relative importance of each factor is case-specific.  *See Entrepreneur*

*Media, Inc. v. Smith*, 279 F.3d 1135, 1140-41 (9th Cir. 2002).  Regardless of the type of alleged confusion at issue—point-of-sale, initial interest, or post-sale confusion—the Court's likelihood of confusion analysis should be guided by an evaluation of the *Sleekcraft* factors.  *See adidas*, 546 F. Supp. 2d at 1052.

### a.    The Parties' Marks Are Highly Similar.

"The first *Sleekcraft* factor—the similarity of the marks—has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com*, 202 F.3d at 1205.  "[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." *Id.* at 1206.  In the similarity analysis, marks should be considered in their entirety and similarities weigh more heavily than differences.  *Entrepreneur Media*, 279 F.3d at 1144. Further, "similarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features."  *adidas*, 546 F. Supp. 2d at 1052 (quoting *Exxon Corp. v. Texas Motor Exch., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)).

Here, the similarities between GTM's 3 Triangles Mark and Columbia's Infringing Triangles Designation are instantly recognizable.  Like GTM's 3 Triangles Mark, Columbia's Infringing Triangles Designation is comprised of three equal-sized, downward-pointing, solid-colored, isosceles triangles stacked vertically on top of each other:





GTM's 3 Triangles Mark        GTM's Sock Product        Columbia's Infringing
                                                         Sock Product

Considered in its entirety, the Infringing Triangles Designation on Columbia's sock products is highly similar to GTM's 3 Triangles Mark. The only arguably discernible difference is Columbia's addition of a rectangular box around the three triangles. Columbia cannot avoid liability for infringement by simply adding a rectangular box around the 3 Triangles Mark.[3] "[W]hat is critical is the <u>overall</u> appearance of the mark as used in the marketplace, not a deconstructionist view of the different components of the marks." *Playmakers, LLC v. ESPN, Inc.,* 297 F. Supp. 2d 1277, 1283 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004) (emphasis in original).

As this Court aptly noted in *adidas v. Payless*,

> "few would be stupid enough to make exact copies of another's mark or symbol. It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts."

*adidas*, 546 F. Supp. 2d at 1053 (quoting *Baker v. Master Printers Union*, 34 F. Supp. 808, 811 (D.N.J. 1940)). Here, although there may be minor differences between Columbia's 3 Triangles Designation and GTM's 3 Triangles Mark, "the overall impression created by the marks is essentially the same, [and thus] it is very probable that the marks are confusingly similar." *Id.* (finding defendant's use of 4 stripes to infringe plaintiff's use of 3 stripes on athletic shoes).[4]

---

[3] Similarly, Columbia cannot avoid liability by placing its house mark on the Infringing Sock Product. As this Court has held, "even if defendant's house mark makes clear that [the infringing product] is a product of [defendant], it does not necessary dispel confusion that the [infringing product] is somehow affiliated with [plaintiff]." *Edge Wireless*, 312 F. Supp. 2d at 1332.

[4] *See also GoTo.com*, 202 F.3d at 1206 (finding actionable similarity despite use of different colors in logo); *adidas-Salomon AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1211 (D. Or. 2002) ("[T]his court cannot simply count the number of stripes and determine as a matter of law that four stripes are not confusingly similar to three stripes."); *ACI Int'l, Inc. v. adidas-Salomon AG*, 359 F. Supp. 2d 918, 922 (C.D. Cal. 2005) ("The Court expressly rejects [defendant's] argument that confusion cannot occur because its shoe has two stripes instead of three…"); *Century 21*

Further, the competitive proximity between the products diminishes any weight accorded to the differences when measuring the similarity of the marks. "[T]he more related the goods, the less evidence of similarity is necessary for a finding of a likelihood of confusion." *Moose Creek, Inc. v. Abercrombie & Fitch Co. et al.*, 331 F. Supp. 2d 1214, 1226 (C.D. Cal. 2004). As discussed below, the 3 Triangles Mark and the Infringing 3 Triangles Designation are used on identical products—namely, socks. Consequently, Columbia's use of the confusingly similar 3 Triangles Designation is likely to mislead or deceive consumers into believing that Columbia's socks bearing the 3 Triangles Designation and GTM's socks bearing the 3 Triangles Mark come from the same source, or that GTM and/or its product bearing the 3 Triangles Mark are otherwise commercially associated with Columbia's Infringing Sock Product.

### b.    GTM and Columbia Sell Competitive Goods.

There is no dispute that the parties' sock products compete directly in the same market and, as such, are more susceptible to confusion. "Where two companies compete directly, there is a greater likelihood that the use of similar marks will cause consumer confusion." *Starbucks*, 2005 U.S. Dist. LEXIS 32660 at *28; *see also Brookfield*, 174 F.3d at 1055 ("Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods."); *E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992) ("Where goods are related or complementary, the danger of consumer confusion is heightened.").

Here, the parties' products are essentially identical in use and function and are offered to the same prospective customers, namely, the broad universe of consumers in the market for socks. As socks which can be worn by persons engaged in outdoor activities or other

---

*Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) (actionable similarity between "Century Investments & Realty" and "Century 21"); *Saks & Co. v. Hill*, 843 F. Supp. 620, 622 (S.D. Cal. 1993) ("Saks Thrift Avenue" likely to be confused with "Saks Fifth Avenue").

recreational and non-recreational activities, the parties' products are "reasonably interchangeable

by buyers for the same purposes," and thus competitive. *adidas*, 546 F. Supp. 2d at 1054

(citation omitted). As the parties' products compete directly with each other, it is logical for

consumers to mistakenly believe that the products, which bear confusingly similar marks,

emanate from a single source, or that GTM has licensed, authorized, or is otherwise

commercially associated with Columbia's socks. *See Brookfield*, 174 F.3d at 1056 ("In light of

the virtual identity of the marks, if they were used with identical products or services likelihood

of confusion would follow as a matter of course."). Columbia's infringing products are so

closely related to GTM's goods in nature that Columbia's use of the Infringing 3 Triangles

Designation is likely to cause initial interest confusion, point-of-sale confusion and/or post-sale

confusion of purchasers and other members of the public. In this way, Columbia has traded upon

the goodwill created by GTM's valuable 3 Triangles Mark. As a result, this factor strongly

favors a likelihood of confusion.

        **c.    The Parties' Products Are Marketed**
                **Through Identical Channels to Identical Customers.**

      The parties' use of the same channels of trade to advertise and sell their goods to identical

customers further "exacerbates" the potential for confusion. *Moose Creek*, 331 F. Supp. 2d at

1229; *see also Starbucks*, 2005 U.S. Dist. LEXIS 32660 at *29 ("The likelihood of confusion

increases when convergent marketing channels are used by the parties."). In particular, the

Internet is a primary marketing channel for both parties. The parties' products are advertised and

offered for sale via the same Internet websites. Moretz Decl., ¶ 4; Conduah Decl., ¶ 6. On

Internet websites offering Columbia's Infringing Sock Product for sale, the product is displayed

outside the packaging with the Infringing 3 Triangles Designation clearly visible to the

consumer. Conduah Decl., ¶ 7, Ex. 4. Thus, Columbia's use of the Internet to market and sell

its Infringing Sock Product is especially likely to cause confusion, including both initial interest

and point-of-sale confusion.  As the Ninth Circuit has held, "the Web, as a marketing channel, is

particularly susceptible to a likelihood of confusion."  *Goto.com*, 202 F.3d at 1207.  Accordingly,

because the parties use the same channels to advertise and sell their goods, this factor strongly

favors GTM.

Even if GTM and Columbia's marketing channels were completely incongruous (which

they are not), this factor would not necessarily favor Columbia because channels of trade are

largely irrelevant in determining the likelihood of *post-sale* confusion.  *See Payless v. Reebok*,

998 F.2d 985, 989-90 (Fed. Cir. 1993) (holding that factors such as channels of trade are

"directed to pre-sale confusion," and are "immaterial to . . . whether actionable confusion is

likely to occur after the marked product has entered the public arena."); *see also adidas*, 546 F.

Supp. 2d at 1055.  This is because post-sale observers may be unaware that the parties' goods are

sold through different retail channels or in different stores, "yet their confusion may be

detrimental" to the trademark holder.  *Payless*, 998 F.2d at 990.  "Post-sale confusion…may be

no less injurious to the trademark owner's reputation than confusion on the part of the purchaser

at the time of sale." *ACI*, 359 F. Supp. 2d at 921.[5]

### d.    GTM's 3 Triangles Mark Is a Strong, Distinctive Mark.

The 3 Triangles Mark is strong and entitled to a broad scope of protection.  Beginning in

about 1979, GTM (through, in part, its predecessors) has used the 3 Triangles Mark as a unitary

trademark, i.e., without being combined with any text or other device, on socks and other

clothing goods and their packaging materials.  Moretz Decl., ¶ 8.  As a consequence of the

---

[5] Columbia presumably also has offered the Infringing Sock Product for sale in over 2,000 retail
stores across the United States.  *Complaint*, ¶ 9.  While initial interest and point-of-sale
confusion may not be as prevalent in retail stores due to product packaging, the likelihood of
post-sale confusion still exists for infringing goods purchased in brick and mortar retail outlets.

longstanding and continuous use of the 3 Triangles Mark by GTM and its predecessors, GTM's products and the 3 Triangles Mark have become closely associated with one another in the mind of the public so that the public has come to recognize the business and goods of GTM, at least in part, by the distinctive 3 Triangles Mark.  In fact, for decades, GTM has enjoyed substantial goodwill and a valuable reputation under the 3 Triangles Mark. *Id.* at ¶ 10.  As the Ninth Circuit has held, "[t]he more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws." *GoTo.com*, 202 F.3d at 1207.

Moreover, there can be no doubt that GTM's 3 Triangles Mark is classified as "arbitrary" on the spectrum of distinctiveness.  Suggestive, fanciful, and arbitrary marks are deemed inherently distinctive and entitled to the most protection because their intrinsic nature serves to identify a particular source of a product.  *adidas*, 546 F. Supp. 2d at 1055-56 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)); *TM Computer Consulting, Inc. v. Apothacare, LLC*, 2008 U.S. Dist. LEXIS 69284, at *18 (D. Or. Sept. 11, 2008) ("A strong mark is inherently distinctive, for example, an arbitrary or fanciful mark; and will be afforded the widest ambit of protection from infringing uses.").  Here, the 3 Triangles Mark is "arbitrary because three [triangles] do not define, describe or suggest the various products that bear them." *adidas*, 546 F. Supp. 2d at 1056 (citation omitted).  Accordingly, the distinctiveness and overall strength of the 3 Triangles Mark are strong indicators that favor a finding of likelihood of confusion.

Even if the 3 Triangles Mark is not inherently distinctive, which it is, it has acquired distinctiveness through secondary meaning.  GTM owns a valid registration for the 3 Triangles Mark, which serves as conclusive proof that the mark has secondary meaning. *See Entrepreneur*

*Media*, 279 F.3d at 1142 n.3. Further, over the last six years, GTM has expended over $4.1 million in advertising in promoting the sale of its goods bearing the 3 triangles Mark.  Moretz Decl., ¶ 11.  GTM's products have been advertised in many forms of media, including television (such as on ESPN/ESPN2), trade magazines (such as Sportstyle), consumer magazines (such as Runners World, Trail Runner, and Rock-N-Ice), programs for major professional sporting events (such as the National Football League Carolina Panthers and New Orleans Saints gameday programs), and other advertisements at major sporting events.  *Id.* at ¶ 5.

Moreover, GTM has obtained and used in recent years the endorsements of the following official GTM spokespersons:  Danielle Ammaccapane, LPGA touring pro; Tim Green, national aerobics champion; Kathy Ireland, lifestyle designer and fitness advocate; NFL greats Ronnie Lott and John Elway; Frank Shorter, Olympic marathon gold medalist; and Dave Hahn, professional mountain guide.  *Id.* at ¶ 6.  GTM's substantial advertising and promotional efforts are significant evidence of the strength of its mark.  *See Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) (affirming trial court's finding of secondary meaning based on "significant" advertising); *Guess?, Inc. v. Tres Hermanos*, 993 F. Supp. 1277, 1280 (C.D. Cal. 1997) ("Strength of mark is demonstrated by extensive advertising . . . .").  Thus, this factor also weighs heavily in favor of GTM.

> **e.    *Columbia Traded On***
> ***GTM's Goodwill in the 3 Triangles Mark.***

There is a reasonably strong inference that Columbia was aware (or, at least, should have been aware) of GTM's 3 Triangle Mark prior to adopting the Infringing 3 Triangles Designation because the parties' products directly compete with each other, and GTM's 3 Triangles Mark has been in use since decades before Columbia's adoption of the 3 Triangles Designation. Moreover, and at the very least, Columbia had constructive knowledge of GTM's mark by virtue

of the 3 Triangles Registration and GTM's decades of use of the mark.  *See Brookfield*, 174 F.3d at 1059 (holding actual or constructive knowledge of a party's mark leads to a presumption of intent to deceive).  Still further, Columbia continued infringing conduct in spite of its actual knowledge (by virtue of GTM's cease and desist letters) that the use of GTM's proprietary 3 Triangles Mark, or any colorable imitation thereof, was and remains in direct contravention of the exclusive proprietary rights of GTM.  Thus, this factor also favors a likelihood of confusion.[6]

### f.   *Evidence of Actual Confusion Is Not Required for GTM to Prevail on Its Trademark Claims.*

It is well established in the Ninth Circuit that it is not necessary for a trademark holder to provide evidence of *any* instances of actual confusion to obtain a preliminary injunction or to prevail at trial on the merits of a trademark infringement claim.  *See, e.g.*, *Brookfield*, 174 F.3d at 1050; *Starbucks*, 2005 U.S. Dist. LEXIS 32660 at *31; *Top Producer Sys. v. Software Sciences*, 1997 U.S. Dist. LEXIS 12369, at *8 (D. Or. June 2, 1997).   While GTM is presently not aware of any reported instance of confusion, a failure to prove instances of actual confusion is not dispositive because of the difficulties in obtaining such evidence.  *Sleekcraft*, 599 F.2d at 353; *see also E. & J. Gallo Winery*, 955 F.2d at 1339.   Indeed, in the preliminary injunction context where, as here, the parties' marks have been competing in the market for a relatively short period of time, it is especially difficult to obtain evidence of actual confusion.  *See Hansen Beverage Co. v. Cytosport, Inc.*, 2009 U.S. Dist. LEXIS 120508, at *39 (C.D. Cal. Nov. 4, 2009) (according little weight to Plaintiff's failure to produce evidence of actual confusion because Defendant had launched infringing product relatively recently).   Accordingly, GTM need not

---

[6] Even if Columbia was not aware of GTM's mark prior to adopting the Infringing 3 Triangles Designation, a showing of "intent to confuse consumers is not required for a finding of trademark infringement."  *Brookfield*, 174 F.3d at 1059; *see also Starbucks*, 2005 U.S. Dist. LEXIS 32660 at *30 ("[I]ntent is not an element of a trademark infringement claim.").

produce evidence of actual confusion in order for the Court to grant a preliminary injunction against Columbia.

> **g.**     ***Consumers Exercise a Low Degree of Care When Purchasing Inexpensive Items Such As Socks.***

The relevant consumers here are ordinary purchasers. Consumers devote limited attention when purchasing low cost items and are thus "more vulnerable to the confusion, mistake, and misassociations against which the trademark law protects." *Starbucks*, 2005 U.S. Dist. LEXIS 32660 at *33 (citing *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 220 (2d Cir. 1999)). Indeed, as this Court noted in *adidas v. Payless*, courts have found that purchasers of "relatively inexpensive athletic and sportswear are not likely to exercise a great deal of care in distinguishing between trademarks when purchasing the goods." *adidas*, 546 F. Supp. 2d at 1060 (quoting *M'Otto Enters., v. Redsand, Inc.*, 831 F. Supp. 1491, 1502 (W.D. Wash. 1993)); *see also Gucci Am., Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1066 (S.D.N.Y. 1991) ("[T]he court has no reason to conclude that the buyers of casual sportswear represent a particularly sophisticated group of customers."). There is no doubt that the purchasers of the goods at issue are no more sophisticated than the general population.

Additionally, the fact that the parties market extensively on the Internet also suggests a lower degree of consumer care. Consumer care is lessened on the Internet because the cost of "surfing" from one website to another is low. *Goto.com*, 202 F.3d at 1209; *see also Brookfield*, 174 F.3d at 1057 ("[E]ntering a web site takes little effort—usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused…"). As a result, this factor strongly favors GTM.

    ***h.***   ***The Likelihood of Expansion into***
        ***Other Markets Has Already Occurred.***

As discussed above, it is undisputed that the parties have already sold directly competitive products.  The parties' goods were advertised and sold in the same trade and marketing channels, namely the Internet and various retail stores across the United States, including Dick's Sporting Goods, and The Sports Authority.  *See* Moretz Decl. ¶ 4; Conduah Decl. ¶¶ 5-6.  There is no restriction on Columbia's ability to sell the Infringing Sock Product at additional retail and Internet stores, and there is no restriction on Columbia's ability to further expand the use of the Infringing 3 Triangles Designation in connection with other goods that compete with GTM's other clothing goods.

In sum, GTM has clearly proven the elements required to demonstrate a likelihood of confusion and, thus, GTM is likely to succeed on the merits of its Lanham Act claims.[7]

**B.**   **GTM Is Also Likely to Succeed on the Merits**
  **of Its Statutory and Common Law Unfair Competition Claims.**

This Circuit has consistently held that state common law claims of unfair competition are "substantially congruent" to claims made under the Lanham Act. *Cleary v. News Corp.*, 30 F. 3d 1255, 1262-63 (9th Cir. 1994).  In unfair competition and trademark infringement claims, the ultimate test under both the Lanham Act and common law is whether the public is likely to be deceived or confused.  *Century 21*, 846 F.2d at 1178; *see also Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (holding that establishing a likelihood of confusion necessarily constitutes unfair competition under North Carolina law).  Thus, in addition to its

---

[7] While the *Sleekcraft* test plays an important role in the analysis of whether a likelihood of confusion exists, the likelihood of confusion is not determined by mechanically counting the number of factors that weigh in favor of each party, or by giving the same weight to a particular factor in each case.  *Entrepreneur Media*, 279 F.3d at 1141; *see also Edge Wireless*, 312 F. Supp. 2d 1330 (holding that in a likelihood of confusion analysis, "it is the totality of facts in a given case that is dispositive").

Lanham Act claims, GTM is also likely to succeed on the merits of its statutory and common law unfair competition claims.[8] The likelihood of success factor therefore weighs heavily in favor of granting GTM's motion for a preliminary injunction.

**C.    GTM Will Suffer Irreparable Harm If the Injunction Is Not Granted.**

There is no question that GTM has suffered and will suffer irreparable harm to its trademark interests and the goodwill associated with its proprietary mark absent injunctive relief.  The law is clear that irreparable injury may be presumed upon a showing of a likelihood of success on the merits of a trademark claim.  *See, e.g.*, *El Pollo Loco, Inc. v. Hashim*, 316 F. 3d 1032, 1038 (9th Cir. 2003) ("[I]rreparable injury may be presumed from a showing of likelihood of success on the merits."); *TM Computer Consulting*, 2008 U.S. Dist. LEXIS 69284 at *24 ("Once plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."); *Top Producer*, 1997 U.S. Dist. LEXIS 12369 at * 3 ("Normally in a trade mark infringement action, if plaintiff establishes a likelihood of confusion, courts may presume that the plaintiff will suffer irreparable harm if injunctive relief is not granted.").  As demonstrated above, Columbia's use of the Infringing 3 Triangles Designation is likely to confuse consumers; thus, GTM is entitled to a presumption of irreparable harm.

This presumption of irreparable harm is based upon the rationale that "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage

---

[8] Even if GTM has not established a likelihood of success on its North Carolina Unfair and Deceptive Trade Practices Act and common law claims, "[wh]ere multiple causes of action are alleged, plaintiff need only show likelihood of success on one claim to justify injunctive relief." *McNeil-PPC v. Granutec, Inc.*, 919 F. Supp. 198, 201 (E.D.N.C. 1995); *see also Nabisco Brands, Inc. v. Conusa Corp.*, 1989 WL 152508, at *2 (4th Cir. Dec. 1, 1989) ("[S]howing entitlement to preliminary injunctive relief with respect to any of the claims would obviate the necessity to consider any other.").

to reputation and loss of goodwill, caused by such violations." *Edge Wireless*, 312 F. Supp. 2d at

1335 (quoting *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2001)).  Irreparable

harm to a trademark owner is inherent in any situation involving the unauthorized use of its

mark, whether such misuse is called infringement, false designation of origin, unfair competition,

misappropriation, or cybersquatting.  *Multi-Channel TV Cable Co. v. Charlottesville Quality*

*Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994); *see also Century 21*, 846 F.2d at 1180

("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since

there is no adequate remedy at law for the injury caused by a defendant's continuing

infringement.").  A trademark's value resides in its ability to connote a single source or sponsor

of a certain type of merchandise.  When infringement of a trademark occurs, that single-source-

identifier characteristic of the trademark is not merely harmed—it is destroyed.  Columbia's

infringement of GTM's mark resulted, as a matter of law, in substantial irreparable harm to

GTM's legitimate trademark interests.  Accordingly, this factor weighs heavily in favor of

granting GTM's motion for injunctive relief.

**D.    The Balance of Hardships Tips Decidedly in Favor of GTM.**

In the Ninth Circuit, a preliminary injunction also may be granted if the moving party

demonstrates the existence of serious questions going to the merits and a balance of hardships

tipping sharply in favor of the moving party.  *See Sardi's*, 755 F.2d at 723; *TM Computer*

*Consulting*, 2008 U.S. Dist. LEXIS 69284 at *7.  Assuming *arguendo* that GTM has not

established a likelihood of success on the merits of its claims (which it has), GTM still has

demonstrated a fair chance of success on the merits of its claims, and the balance of hardships

tips decidedly in its favor.

For purposes of injunctive relief, "serious questions" refer to questions that cannot be resolved one way or the other but involve "a fair chance of success on the merits" and as to which "the court perceives a need to preserve the status quo" (i.e., the status quo of the parties before the commencement of the activities for which injunctive relief is sought). *TM Computer Consulting*, 2008 U.S. Dist. LEXIS 69284 at *6. Here, even if the Court finds that GTM has not established a likelihood of success, GTM certainly has established that serious questions exist that warrant preservation of the pre-infringement status of the parties. As demonstrated above, there are striking similarities between the parties' marks, the parties' marks are used in connection with essentially identical products, and the parties' goods have been sold and advertised through the same channels. As this Court has held, "[s]erious questions need not promise a certainty of success, nor even present a probability of success…" *Id.* at *7.

Moreover, the balance of hardships tips decidedly in favor of GTM, the innocent party. Columbia cannot legitimately claim any harm if the preliminary injunction that GTM seeks is granted. The only harm Columbia will suffer is that it will no longer be able to mislead the public and infringe GTM's 3 Triangles Mark. Columbia can hardly claim to have a protectable interest in such unfair and deceptive conduct. Furthermore, any harm that Columbia may suffer from the granting of a preliminary injunction is of its own making. *See, e.g., Triad Sys. Corp. v. Southeastern Export Co.*, 64 F. 3d 1330, 1338 (9th Cir. 1995) (holding that an infringer cannot complain about being denied the opportunity to infringe and uses the marks of others at its own risk); *McNeil-PPC v. Granutec, Inc.*, 919 F. Supp. 198, 204 (E.D.N.C. 1995) ("The possibility of a lawsuit was a risk [defendant] assumed when it chose to closely duplicate [plaintiff's] product."); *Pacific Intern. Rice Mills, Inc. v. Rice Growers Ass'n of CA*, 1989 U.S. Dist. LEXIS 16953, at *12 (E.D. Cal. June 14, 1989) ("Defendant… assumed the risk of potential loss when it

decided to continue to use the challenged trademark."). Additionally, Columbia will suffer "no real harm" because Columbia only started selling the Infringing Sock Product recently; thus, it could not have expended nearly the same amount of money promoting its Infringing 3 Triangles Designation as GTM has in promoting its 3 Triangles Mark for over three decades. *ASCICS Corp. v. Wanted Shoes, Inc.*, 2005 U.S. Dist. LEXIS 17187, at *17 (C.D. Cal. Jan. 25, 2005).

In contrast, the goodwill and single-source connotation of GTM's 3 Triangles Mark will be irreparably harmed by Columbia's deceptive conduct absent injunctive relief. In view of GTM's high likelihood of success on the merits of its claims, the potential that Columbia will be harmed is minimal. Thus, the balance of equity weighs overwhelmingly in GTM's favor, and GTM's motion for injunctive relief should be granted.

### E.     The Public Interest Is Served By Granting the Injunction.

One of the primary purposes behind the trademark laws is to protect the purchasing public from being misled. Enjoining Columbia from its infringing conduct will prevent consumer confusion and, thus, serves the public interest. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F. 3d 894, 905 (9th Cir. 2002) (stating that "a trademark injunction, even a very broad one, is premised on the need to prevent consumer confusion" and protects the important interest in avoiding harm to consumers). The public has an interest in not being deceived by Columbia's use of a designation that is confusingly similar to GTM's 3 Triangles Mark. Accordingly, the public interest will be served if an injunction is issued against Columbia.

## CONCLUSION

For the foregoing reasons, GTM respectfully requests that the Court grant its motion for a preliminary injunction.

Dated: May 13, 2011                     Respectfully submitted,


By:           s/Scott E. Davis
              Scott E. Davis, OSB #022883
              Email:  scott.davis @klarquist.com
              KLARQUIST SPARKMAN, LLP
              121 SW Salmon Street, Suite 1600
              Portland, OR  97204
              Telephone:  503-595-5300
              Facsimile:  503-595-5301

              *Attorneys for Defendant/Counter-Plaintiff
              GoldToeMoretz, LLC*

              Larry C. Jones (NC Bar #19357)
                (pro hac vice application to be filed)
              Email:  larry.jones@alston.com
              Jason M. Sneed (NC Bar #29593)
                (pro hac vice application to be filed)
              Email:  Jason.sneed@alston.com
              Theresa Conduah (NC Bar #37613)
                (pro hac vice application to be filed)
              Theresa.conduah@alston.com
              ALSTON & BIRD LLP
              101 S Tryon Street, Suite 4000
              Charlotte, NC  28280
              Telephone:  704-444-1019

              *Of Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 13, 2011, a copy of the foregoing MEMORANDUM IN

SUPPORT OF GOLDTOEMORETZ, LLC'S MOTION FOR PRELIMINARY INJUNCTION

was filed electronically.  Notice of this filing will be sent to the parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.


By:    <u>        s/Scott E. Davis        </u>
       Scott E. Davis, OSB #022883