**Michael A. Cohen, OSB #965776**
Email: mcohen@schwabe.com
**Matthew R. Wilmot, OSB #061936**
Email: mwilmot@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Ave., Suites 1500-2000
Portland, OR  97204
Telephone 503.222.9981
Fax 503.796.2900

Attorneys for Plaintiff/Counter-Defendant Columbia Sportswear
Company and Plaintiffs Columbia Sportswear North America, Inc.
and Columbia Sportswear USA Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COLUMBIA SPORTSWEAR COMPANY,** an Oregon corporation, **COLUMBIA SPORTSWEAR NORTH AMERICA, INC.,** an Oregon corporation, and **COLUMBIA SPORTSWEAR USA CORPORATION,** an Oregon corporation, | Civil No. CV-11-181-MO |
| | **PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO GOLDTOEMORETZ, LLC'S MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiffs, | |
| v. | |
| **GOLDTOEMORETZ, LLC,** a Delaware limited liability company, | |
| Defendant. | |

RESPONSE MEMORANDUM IN OPPOSITION TO GOLDTOEMORETZ,
LLC'S MOTION FOR PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND .................................................................................1

I.      Columbia Sportswear and the Product at Issue..................................1

II.     GoldToe .............................................................................................3

III.    The Current Dispute ..........................................................................5

POINTS AND AUTHORITIES .............................................................................6

I.      Preliminary Injunction Standard .......................................................6

II.     GoldToe Cannot Meet Its Burden Under *Winter* ..............................8

        A.      GoldToe Cannot Show a Likelihood of Irreparable Harm Because Columbia Has Agreed Not to Sell the Socks While This Dispute Is Pending ........................8

                1.      Columbia has not sold or distributed the Socks since February 2011 .........................................................................8

                2.      GoldToe has not brought forth any actual evidence that would support a showing of irreparable harm ...................9

        B.      GoldToe is Not Likely to Succeed on Its Trademark Infringement Claim...........10

                1.      Columbia is not using the Design as a trademark.....................................10

                2.      There is no likelihood of confusion between the Designs ........................11

                        a.      The Design and the 3 Chevrons mark are not confusingly similar in appearance ...............................................12

                                i.      Any potential for confusion is minimized because the Sock was sold under Columbia's distinctive trademarks ...12

                                ii.     GoldToe ignores the overall commercial impression created by the Design.......................................14

                        b.      GoldToe's design is a weak mark entitled to only a limited scope of protection ....................................................15

                        c.      GoldToe has no evidence of actual confusion ...............................17

C.      The Balance of Equities Do Not Weigh in GoldToe's Favor ................................18

D.      The Public Interest Does Not Weigh in Favor of Injunctive Relief .....................19

CONCLUSION...........................................................................................................................19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AMF, Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ........................................................................12

*Adidas America, Inc. v. Payless Shoesource, Inc.*,
   546 F. Supp. 2d 1029 (D. Or. 2008) ........................................................15, 16

*Alliance for the Wild Rockies v. Cottrell*,
   622 F.3d 1045 (9th Cir. 2010) .......................................................................7

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ........................................................................7

*American Express Travel Related Services Co. v. Mastercard Inc.*,
   776 F. Supp. 787 (S.D.N.Y. 1991) ..................................................................8

*In re Astro-Gods Inc.*,
   223 U.S.P.Q. 621 (T.T.A.B. 1984) ................................................................11

*Aurora World, Inc. v. Ty Inc.*,
   719 F. Supp. 2d 1115 (C.D. Cal. 2009) .......................................................7, 9

*Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*,
   685 F. Supp. 2d 1001 (N.D. Cal. 2009) .........................................................17

*Brookfield Commc'ns, Inc. v. W. Coast Entertainment Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ......................................................................12

*Brooks Manufacturing Inc. v. Suave Shoe Corp.*,
   716 F.2d 854 (11th Cir. 1983) ......................................................................16

*Cohn v. Petsmart, Inc.*,
   281 F.3d 837 (9th Cir. 2002) ........................................................................12

*In re David Crystal, Inc.*,
   296 F.2d 771 (C.C.P.A. 1961) ......................................................................11

*In re Dmitri's Inc.*,
   9 U.S.P.Q.2d 1666 (T.T.A.B. 1987) ..............................................................11

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006)........................................................................................7

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) ......................................................................16

*Falcon Stainless, Inc. v. Rino Cos.*, CV 08-926,
   2008 U.S. Dist. LEXIS 102442 (S.D. Cal. Dec. 9, 2008)...............................16

*Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.,*
    198 F.3d 1143 (9th Cir. 1999) ...........................................................................17

*First Brands Corp. v. Fred Meyer, Inc.,*
    809 F.2d 1378 (9th Cir. 1987) ...........................................................................17

*In re General Tire & Rubber Co.,*
    404 F.2d 1396 (C.C.P.A. 1969) ..........................................................................11

*International Jensen, Inc. v. Metrosound U.S.A., Inc.,*
    4 F.3d 819 (9th Cir. 1993) ..........................................................................12, 19

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997)................................................................................................7

*McNeil-PPC v. Granutec, Inc.,*
    919 F. Supp. 198 (E.D.N.C. 1995).....................................................................18

*Mirina Corp. v. Marina Biotech,*
    No. C10-1322RAJ, 2011 U.S. Dist. LEXIS 28117 (W.D. Wash. Mar. 7, 2011) ...........7, 9

*Nabisco, Inc. v. Warner-Lambert Co.,*
    220 F.3d 43 (2d Cir. 2000).................................................................................13

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,*
    No. 10-55840, 2011 U.S. App. LEXIS 4488 (9th Cir. Mar. 8, 2011) .......................13, 16

*Norm Thompson Outfitters, Inc. v. General Motors Corp.,*
    448 F.2d 1293 (9th Cir. 1971) ...........................................................................13

*Nutri/System, Inc. v. Con-Stan Industries, Inc.,*
    809 F.2d 601 (9th Cir. 1987) .............................................................................12

*Parkway Baking Co. v. Freihofer Baking Co.,*
    255 F.2d 641 (3d Cir. 1958)..................................................................................8

*Pristine Industries, Inc. v. Hallmark Cards, Inc.,*
    753 F. Supp. 140 (S.D.N.Y. 1990) .....................................................................13

*Rapid Hot Flow, LLC v. Rocky Mt. Oilfield Servs., LLC,*
    No. 4:10-CV-00601-EJL-MHW, 2011 U.S. Dist. LEXIS 26619
    (D. Idaho Mar. 15, 2011) .....................................................................................8

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Products,*
    134 F.3d 749 (6th Cir. 1998) .............................................................................10

*Rodan & Fields, LLC v. Estee Lauder Cos.,* 10-CV-02451,
    2010 U.S. Dist. LEXIS 190753 (N.D. Cal. October 5, 2010)...............................9

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.,*
    613 F.3d 754 (8th Cir. 2010) .............................................................................18

*Star Industrial, Inc. v. Bacardi & Co.,*
    412 F.3d 373 (2d Cir. 2005)..........................................................................16, 17

*Surfvivor Media, Inc. v. Survivor Productions*,
    406 F.3d 625 (9th Cir. 2005) ........................................................................... 14

*TM Computer Consulting, Inc. v. Apothacare, LLC*, CV No. 08-6267
    2008 U.S. Dist. LEXIS 69284 (D. Or. Sept. 11, 2008) ................................... 16

*The Active Network, Inc. v. Electronic Arts, Inc.,* 10-CV-1158,
    2010 U.S. Dist. LEXIS 90602 (S.D. Cal. August 30, 2010) ........................... 12

*Triad System Corp. v. Southeastern Express Co.*,
    64 F.3d 1330 (9th Cir. 1995) ......................................................................... 18

*Two Pesos v. Taco Cabana*,
    505 U.S. 763 (1992) ...................................................................................... 10

*In re Villeroy & Boch S.A.R.L.*,
    5 U.S.P.Q.2d 1451 (T.T.A.B. 1987) ............................................................... 11

*Vision Sports, Inc. v. Melville Corp.*,
    888 F.2d 609 (9th Cir. 1989) ......................................................................... 17

*Walter v. Mattel, Inc.*,
    31 F. Supp. 2d 751 (C.D. Cal. 1998) ............................................................. 14

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ..................................................................................... 7, 8, 9

## FEDERAL STATUTES

15 U.S.C. § 1114(1)(a) ........................................................................... 10, 12

15 U.S.C. § 1115(a) ..................................................................................... 10

15 U.S.C. § 1125(a) ..................................................................................... 12

15 U.S.C. § 1127 .......................................................................................... 10

TMEP § 1202.03 ........................................................................................... 10

TMEP § 1202.03(a) ...................................................................................... 11

## INTRODUCTION

Columbia Sportswear Company is one of the world's largest designers and sellers of high quality outdoor gear, and its brands are well-known throughout the world.  The accused products in this case are Columbia-branded specialty hiking socks that have an ornamental design featuring 3 triangles that appear as arrows pointing down toward the toes.  These designs are not visible to a potential consumer when seen in the sock's packaging in a store.  In any event, no consumer is likely to believe that anyone but Columbia sells these products, since Columbia's brands and logos are predominant on the product and packaging.

Plaintiff GoldToe alleges that Columbia's socks infringe GoldToe's rights in what it now describes as its "3 triangles" mark.  GoldToe's motion should be denied because there is no likelihood of irreparable harm in this case.  Columbia has already discontinued the manufacture of socks incorporating the accused design, and has told GoldToe that it will withhold any remaining inventory from sale until this dispute is resolved.  GoldToe's motion is effectively moot, and GoldToe knew it was moot before filing its motion.

GoldToe also fails to show a likelihood of success on the merits.  There is no likelihood of confusion because: (1) the accused design used on Columbia's socks is not an indicator of product source, and will instead be perceived by consumers as a decorative or ornamental feature; (2) Columbia's use of its well-known trademarks and logos on the socks and their packaging means that consumers in the marketplace will not be confused as to whether Columbia's socks are associated with any source other than Columbia; and (3) the respective designs, when viewed in their entireties, are not sufficiently similar to cause consumer confusion. For at least these reasons, GoldToe's motion for preliminary injunction should be denied.

## FACTUAL BACKGROUND

### I.    Columbia Sportswear and the Product at Issue.

Founded in 1938, Columbia has grown from a small family-owned hat distributorship to one of the world's largest designers and sellers of outerwear and outdoor apparel and

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

accessories. *See* Declaration of John Motley in Support of Plaintiff's Response Memorandum in Opposition to GoldToeMoretz, LLC's Motion for Preliminary Injunction ("Motley Decl."), ¶ 2. Columbia currently distributes its outerwear, sportswear, footwear, backpacks, equipment and accessories in more than 100 countries to over 10,000 retail outlets around the world. In the United States alone, Columbia products are sold throughout the country in over 3,500 retail stores as well as six Columbia flagship stores. *Id.* ¶ 3. Columbia attributes its success to its strong brand and goodwill developed over time as a result of its innovative apparel designs, quality products, and creative marketing. *Id.*

In early 2010, Columbia introduced a women's outdoor hiking specialty sock marketed under the trademarks "Women's Hiker Mid™" and "Women's Hiker Lite™" (collectively, the "Sock(s)"). *Id.* ¶ 4. The Sock design features: (1) two bands that loop around the heel and toe areas of the Sock; (2) three large, equally-spaced, downward-pointing triangles inside a rectangular border covering nearly the entire the bridge of the foot; (3) Columbia's distinctive OMNI-DRY® trademark just above the toe; and (4) the famous Columbia ◆ logo, located on the calf portion of the Sock (collectively, the "Design"), as shown below:[1]



Columbia logo

Bands around heel and toe areas

Equally spaced triangles enclosed within rectangular border

OMNI-DRY® trademark

---
[1] A physical sample will be provided to the Court at the preliminary injunction hearing.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

The Socks were sold online and in brick-and-mortar retail stores, with a suggested retail price of approximately $14.00 per pair. *Id.* ¶ 7. This price is relatively high for socks because they are a specialty item. *Id.* The packaging for the Socks prominently displayed Columbia's trademark and logo, but did not show any other aspect of the Design. *Id.* ¶ 8. Instead, the packaging for the Socks concealed nearly every feature of the Design other than the Columbia name and logo, as shown below. *Id.*

 

In order to view the Design at the point of purchase, including the Design's triangle feature, the consumer would have to remove the Socks from their packaging. *Id.* ¶ 9. The same is true for those consumers who received the Socks post-sale after purchasing them online, as the Socks would be delivered in their product packaging. *Id.* The only consumers who might have seen the Socks without their product packaging are online shoppers. But when displayed online, the Socks were always closely tied to the Columbia brand and identified as a Columbia product, whether they were sold on Columbia's own website, www.columbia.com, or the website of a third-party retailer such as Amazon.com. *Id.*

## II.    GoldToe.

GoldToe makes and sells socks. Its products range from dress socks to athletic socks. The products at issue in the current case are GoldToe's line of casual/athletic socks known as "PowerSox." *See* Declaration of John M. Moretz ("Moretz Decl."), ¶ 8, Ex. A. This line of

Page 3 -      RESPONSE MEMORANDUM IN OPPOSITION TO GOLDTOEMORETZ,
LLC'S MOTION FOR PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

casual/athletic socks offered by GoldToe sell at much lower price points than Columbia's specialty Socks, between $5.99 to $6.99 for a single pair (depending on the sock), $8.39 to $11.99 for two pairs (depending on the sock), and approximately $10.99 for three pairs (depending on the sock).  *See* Declaration of Matthew R. Wilmot ("Wilmot Decl."), ¶ 2, Ex. A.

GoldToe owns a federal trademark registration for a "3 Chevrons" design, U.S. Registration No. 2,954,083, for "socks and clothing, namely, shirts, pants, leggings, shorts, hats, visors, shoes, and sandals, as used on socks, the mark is not used between the toe and the heel areas of socks in the colors gold or yellow."  As shown in GoldToe's registration, the 3 Chevrons design consists of three tightly stacked inverted chevrons.  Each chevron is wide in length and shallow in height with a nearly imperceptible amount of space between each chevron.  Taken together, the 3 Chevrons design is significantly wider from side-to-side than it is from top to bottom and, due to its tightly compressed nature, creates the impression of a unitary design.  As used on the actual GoldToe PowerSox, the 3 Chevrons design is typically featured on a small portion of the sock located on either the bridge of the foot, directly above the toe and/or just above the ankle (when used on the ankle, the 3 Chevrons design is displayed within an oval that is not a feature of the mark as registered by GoldToe):



Location Above the Toe


Location on Bridge of the Foot
and Above the Ankle

RESPONSE MEMORANDUM IN OPPOSITION TO GOLDTOEMORETZ, LLC'S MOTION FOR PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

### III.   The Current Dispute.

On or about January 15, 2011, John Motley, Columbia's Associate General Counsel & Director of Intellectual Property, received an email from Larry Jones, an attorney with the law firm of Alston & Bird, representing GoldToe.  Motley Decl., ¶ 10.  Attached to the email was a formal "cease and desist" letter of the same date alleging that Columbia's use of the Design in connection with the Socks infringed what Mr. Jones referred to as GoldToe's "3 Chevrons" design (this is the same design now referred to by GoldToe as its "3 triangles" design).  *Id.*  The letter demanded, among other things, that Columbia cease and desist from all further use of the Design or sale of the Socks, that Columbia produce a list of Columbia's wholesalers and retailers who had sold or distributed the Socks, and that Columbia provide GoldToe with an accounting of its total revenues from the sale of the Socks.  *Id.* ¶ 11.

Columbia was surprised to receive a letter from Alston & Bird, the same law firm that had recently served as counsel to Columbia in defending a trademark infringement case in California brought against Mountain Hardwear, Inc., a wholly-owned subsidiary of Columbia, under the direction and engagement of Mr. Motley who oversees intellectual property matters for all Columbia brands, including Mountain Hardwear.  *Id.* ¶ 12.  Columbia promptly informed Alston that it objected to Alston's representation of a client adverse to Columbia in this trademark case.  *Id.  See also* Declaration of Peter J. Bragdon, ¶ 2, Ex. A.  Nevertheless, Mr. Motley proceeded to conduct an internal investigation of GoldToe's claims.  *Id.*  Mr. Motley's internal investigation confirmed that the Design was intended to be a purely ornamental and decorative feature of the Socks, and had been developed without any knowledge of GoldToe's 3 Chevrons design.  *Id.* ¶¶ 6, 13-14.  Columbia designs its products to capitalize on the strength of its brand.  *Id.* ¶ 14.  Columbia's products do not typically feature logos or designs other than Columbia's well-known trademarks and logo.  *Id.*

Columbia actively polices and enforces its own marks and respects the *bona fide* intellectual property rights of others.  *Id.* ¶ 15.  Accordingly, despite his firm conviction that the

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

Design on Columbia's Socks was not an indicator of source, and that there was no possibility of confusion between GoldToe's 3 Chevrons design and the ornamental feature of Columbia's Socks, in early February 2011, Mr. Motley instructed Columbia's internal personnel that all inventory of the Socks should be withheld from sale or distribution until further notice. *Id.* Mr. Motley further instructed Columbia's sourcing personnel to have Columbia's sock manufacturers cease all production of socks bearing the Design. *Id.*

In email exchanges between the parties, Columbia denied that its use of the Design infringed GoldToe's 3 Chevrons design but nevertheless attempted to resolve this dispute short of litigation. *Id.* ¶ 16. Among other things, Columbia offered to cease selling the Socks permanently once Columbia's current inventory was depleted. *Id.* GoldToe rejected these offers and instead reiterated its demand that Columbia immediately cease and desist from all further sale of the Socks and that Columbia also disclose to GoldToe the volume of its sales and associated revenues. *Id.* ¶ 17. After its efforts to amicably resolve this dispute failed, Columbia filed the current declaratory action seeking to remove the cloud that GoldToe's threats of lawsuits and allegations of infringement had cast on Columbia's business operations. *Id.* ¶ 18. Columbia continues to hold all inventory of the Socks in its possession, and has informed GoldToe that it will not release or otherwise distribute its current inventory of Socks until this dispute is resolved. *Id.* ¶ 19.

Despite Columbia's repeated attempts at settlement and its agreement not to release or otherwise distribute its inventory of Socks, GoldToe filed the current motion. GoldToe asks that Columbia be enjoined from further sale or distribution of the Socks, something that Columbia has already agreed to do. For the reasons that follow, GoldToe's motion for preliminary injunction should be denied.

## POINTS AND AUTHORITIES

### I.    Preliminary Injunction Standard.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be

RESPONSE MEMORANDUM IN OPPOSITION TO GOLDTOEMORETZ, LLC'S MOTION FOR PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). A preliminary injunction should never be granted as of right. *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 31 (2008).

GoldToe incorrectly recites the standards applied by federal courts in the Ninth Circuit in deciding motions for preliminary injunctive relief. As set forth in *Winter*, a party seeking injunctive relief has the burden of proving four separate elements: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Id.* at 24-25.

*Winter* overruled the Ninth Circuit cases cited by GoldToe that allowed courts to grant injunctions based on a "sliding scale" where there was only the "possibility" of irreparable harm. *Id.* at 27 (Ninth Circuit 'possibility' standard "too lenient"); *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("[t]o the extent our cases have suggested a lower standard, they are no longer controlling, or even viable"). In the Ninth Circuit, the "sliding scale" approach survived *Winter*, but only to the extent it is part of the four-pronged *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052-53 (9th Cir. 2010). Thus, "serious questions going to the merits" will not support an injunction without a *likelihood* of irreparable harm and a showing that the injunction is in the public interest. *Id.* Even then, the "serious questions" approach requires that the balance of hardships tips *sharply* in the plaintiff's favor. *Id.*

GoldToe is also incorrect that there is a presumption of irreparable harm upon a showing of likelihood of confusion. Courts within the Ninth Circuit have recognized that *Winter* and the Supreme Court's opinion in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393-94 (2006), overruled the presumption of irreparable harm approach previously applied in the Ninth Circuit. *See, e.g., Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1167-68 (C.D. Cal. 2009).[2] To

---

[2] *See also Mirina Corp. v. Marina Biotech*, No. C10-1322RAJ, 2011 U.S. Dist. LEXIS 28117, at *22 (W.D. Wash. Mar. 7, 2011) (refusing to apply presumption of irreparable harm in

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

qualify for preliminary injunctive relief, GoldToe must make the required showing under each element required by *Winter*. GoldToe cannot meet this burden.

## II.    GoldToe Cannot Meet Its Burden Under *Winter*.

GoldToe cannot meet its burden of showing it is entitled to an injunction under *Winter* because it cannot show a likelihood of irreparable harm. Columbia has already agreed not to distribute or sell its inventory of Socks until this dispute is resolved. Motley Decl., ¶¶ 15, 19. Even if it could establish a likelihood of irreparable harm, GoldToe is still not entitled to injunctive relief because it is unlikely to prevail on the merits of its trademark infringement claims against Columbia, the balance of the equities does not favor GoldToe, and the public interest does not weigh in favor of injunctive relief.

### A.    GoldToe Cannot Show a Likelihood of Irreparable Harm Because Columbia Has Agreed Not to Sell the Socks While This Dispute Is Pending.

#### 1.    Columbia has not sold or distributed the Socks since February 2011.

GoldToe cannot establish a likelihood of irreparable harm because the conduct sought to be enjoined by GoldToe ceased in early February 2011, shortly after Columbia was informed of GoldToe's infringement allegations. Motley Decl., ¶ 15. Columbia then instructed its suppliers to cease manufacturing the Socks, and instructed its distribution centers, retail stores, and sales personnel to remove the Socks from store shelves and to hold all existing inventory until further notice. *Id.* Columbia will not sell or distribute its inventory until this dispute has been resolved. *Id.* ¶ 19.

Courts do not generally grant injunctive relief where the harm sought to be prevented has ceased and is unlikely to resume. *See, e.g., Am. Express Travel Related Servs. Co. v. Mastercard Int'l, Inc.*, 776 F. Supp. 787, 789-91 (S.D.N.Y. 1991); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 648-49 (3d Cir. 1958). GoldToe knows Columbia's position, but

---

trademark case and finding plaintiff "failed to submit any proof beyond speculation as to its goodwill or reputation in the relevant market"; injunction denied); *Rapid Hot Flow, LLC v. Rocky Mt. Oilfield Servs., LLC*, No. 4:10-CV-00601-EJL-MHW, 2011 U.S. Dist. LEXIS 26619, at *7 (D. Idaho Mar. 15, 2011) ("[n]o longer are plaintiffs granted the presumption of irreparable harm upon a showing of likelihood of success on the merits").

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

nevertheless brings this motion for preliminary injunction.  GoldToe fails even to mention in its supporting memorandum that Columbia has agreed not to sell or distribute the Socks pending the outcome of this dispute, although GoldToe does acknowledge that the Socks are no longer for sale on Columbia's website.  *See* GoldToe Memo, p. 4 n.1.  Since GoldToe cannot reasonably fear immediate harm, it is likely that it seeks preliminary relief as a tactic to increase leverage on Columbia to give up its position on the merits.  GoldToe's failure to show this essential element is fatal to its claim for preliminary relief.

> **2.    GoldToe has not brought forth any actual evidence that would support a showing of irreparable harm.**

Following *Winter*, federal district courts within the Ninth Circuit have refused to accept mere allegations of irreparable harm based on speculative and conclusory theories of harm to reputation or goodwill, instead requiring the movant to come forward with sufficient evidence. *See, e.g., Aurora World*, 719 F. Supp. 2d at 1167-69 (injunction denied where plaintiff failed to offer evidence of reputation and lost sales sufficient to constitute irreparable harm).[3]  GoldToe's John M. Moretz states in his declaration only that the 3 Chevrons design "has enjoyed substantial goodwill and a valuable reputation," but fails to provide any actual evidence that Columbia's use of the Design harms GoldToe's reputation or goodwill.  *See* Moretz Decl., ¶ 10.  In fact, GoldToe concedes that it is not aware of any instances of actual confusion, although the Sock was sold contemporaneously with GoldToe's products for approximately one year.  GoldToe Memo, p. 16.  Without any evidence, GoldToe cannot show a likelihood of irreparable harm to support the extraordinary remedy of an injunction.

---

[3] *See also Mirina Corp. v. Marina Biotech*, 2011 U.S. Dist. LEXIS 28117, at *22; *Rodan & Fields, LLC v. Estee Lauder Cos.,* No. 10-CV-02451, 2010 U.S. Dist. LEXIS 190753, at *18-19 (N.D. Cal. Oct. 5, 2010).

Page 9 -    RESPONSE MEMORANDUM IN OPPOSITION TO GOLDTOEMORETZ, LLC'S MOTION FOR PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

**B.      GoldToe Is Not Likely to Succeed on Its Trademark Infringement Claim.**

GoldToe brings claims for trademark infringement under the Lanham Act and state law.[4]

The elements of a claim for trademark infringement are: that the plaintiff has a valid and

protectable mark;[5] that the defendant is using the plaintiff's mark as a trademark; and that there

is a likelihood of confusion between the marks.  *See Two Pesos v. Taco Cabana*, 505 U.S. 763

(1992); 15 U.S.C. § 1114(1)(a).  GoldToe is unlikely to prevail on its infringement claims

because: (1) Columbia is not using the Design as an indicator of source; and (2) consumers are

not likely to be confused between the designs at issue.

### 1.      Columbia is not using the Design as a trademark.

GoldToe's formulation of the elements of a claim for trademark infringement leaves out

an essential element, *i.e.*, that the defendant is using the alleged mark as a trademark.  *Rock &*

*Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998).  A

trademark is "any word, name, symbol, or device, or any combination thereof," which serves "to

indicate the source of the goods, even if that source is unknown."  15 U.S.C. § 1127.  A

trademark use creates "a separate and distinct commercial impression, which . . . performs the

function of identifying the source of the merchandise to the customers."  *Rock & Roll*, 134 F.3d

at 753.

Columbia's use of the Design is mere ornamentation that does not identify Columbia as

the source of the Socks and thus does not serve a trademark purpose.  According to the U.S.

Patent and Trademark Office's Trademark Manual of Examining Procedure, "[s]ubject matter

that is merely decorative does not identify and distinguish the applicant's goods and, thus, does

not function as a trademark."  TMEP § 1202.03.  For example, three narrow white concentric

---

[4] GoldToe includes a counterclaim under North Carolina law.  Columbia intends to move to dismiss that count, but will preserve those arguments at this stage because GoldToe concedes that its state law claims fail to the extent its Lanham Act claim fails.

[5] Columbia acknowledges GoldToe's federal registration for the 3 Chevrons design, U.S. Registration No. 2,954,083.  While a federal trademark registration provides the owner a presumption of validity, that presumption is rebuttable.  *See* 15 U.S.C. § 1115(a).  Where, as here, a mark consists of basic geometric shapes, it is not protectable as a trademark without showing secondary meaning.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

rings of approximately equal width applied to the outer surface of a tire side wall was considered a general ornamental concept rather than a trademark, *see In re General Tire & Rubber Co.*, 404 F.2d 1396 (C.C.P.A. 1969); likewise, two parallel colored bands at the top of a sock was held to be merely ornamental in the absence of "convincing evidence" that the purchasing public recognized the design as a trademark, *In re David Crystal, Inc.*, 296 F.2d 771 (C.C.P.A. 1961); and a floral design on tableware was held to be merely a decorative pattern that did not qualify as a trademark use sufficient to support registration, *In re Villeroy & Boch S.A.R.L.*, 5 U.S.P.Q.2d 1451 (T.T.A.B. 1987).

Here, Columbia used the Design merely to serve an ornamental and decorative purpose, rather than as an indicator of source for the Sock, as evidenced by the fact that the product packaging for the Socks entirely concealed the Design from public view. Motley Decl., ¶¶ 6, 8, 13-14. If Columbia intended to use the Design as a brand, it would have been plainly visible to potential consumers at the point of sale. Further, based on the size of the Design and the area in which it was featured on the Socks, consumers would not have viewed the Design as an indicator of source, but rather as an ornamental and decorative feature. *See, e.g., In re Dmitri's Inc.*, 9 U.S.P.Q.2d 1666, 1667 (T.T.A.B. 1988); *In re Astro-Gods Inc.*, 223 U.S.P.Q. 621, 623 (T.T.A.B. 1984); TMEP § 1202.03(a) ("A small, neat, and discrete word or design feature . . . may be likely to create the commercial impression of a trademark, whereas a larger rendition of the same matter emblazoned across the front of a garment . . . may be likely to be perceived merely as a decorative or ornamental feature of the goods."). The Design was not intended to and did not create a distinct commercial impression which performed the function of identifying the source of the Socks to the consumer. Instead, it represented a refinement of a commonly used form of ornamentation – *i.e.*, lines and geometric shapes. Because Columbia did not use the Design as a trademark, it did not infringe GoldToe's mark.

## 2.      There is no likelihood of confusion between the Designs.

Likelihood of confusion is the test for trademark infringement under the Lanham Act.

RESPONSE MEMORANDUM IN OPPOSITION TO GOLDTOEMORETZ, LLC'S MOTION FOR PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

*See* 15 U.S.C. §§ 1114(1)(a) 1125(a).  The moving party must show that confusion is probable, not merely possible.  *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002).

In the Ninth Circuit, courts look to the following factors in determining whether confusion is likely: (1) the similarity of the marks; (2) the relatedness of the parties' goods; (3) the similarity of trade and marketing channels; (4) the strength of the plaintiff's mark; (5) the defendant's intent; (6) evidence of actual confusion; (7) the degree of care exercised by the average purchaser; and (8) the likelihood of expansion into other markets.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  The *Sleekcraft* test is a "pliant" test, in which some factors may be much more important than others depending on the case at issue. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). Here, the dissimilarity between the marks, the weakness of GoldToe's design, the lack of actual confusion between the designs, and the lack of any intent to deceive on the part of Columbia are the critical factors that demonstrate no likelihood of confusion.

### a.    The Design and the 3 Chevrons mark are not confusingly similar in appearance.

Marks must be compared by looking at them as a whole, rather than breaking the marks up into their component parts for comparison. *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 825 (9th Cir. 1993) (overall appearances of parties' marks created dissimilar "total effect"; injunction denied).  Because the average consumer only retains a general impression created by the marks as a whole, the overall appearance of the mark as used in the marketplace – not the courtroom – is the relevant inquiry.  *See Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 605-06 (9th Cir. 1987); *The Active Network, Inc. v. Electronic Arts Inc.*, No. 10-CV-1158, 2010 U.S. Dist. LEXIS 90602, at *8 (S.D. Cal. Aug. 30, 2010).

### i.    Any potential for confusion is minimized because the Sock was sold under Columbia's distinctive trademarks.

It is well-settled that the use of the defendant's own marks in connection with the allegedly infringing mark "has the potential to reduce or eliminate confusion."  *Cohn*, 281 F.3d

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW Fifth Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

at 842; *see also Norm Thompson Outfitters, Inc. v. Gen. Motors Corp.*, 448 F.2d 1293, 1298 (9th Cir. 1971). This is especially true where the defendant's mark is strong. *See, e.g., Pristine Indus., Inc. v. Hallmark Cards, Inc.*, 753 F. Supp. 140, 145-46 (S.D.N.Y. 1990) (use of the defendant's well-known HALLMARK mark was strong factor pointing to no likelihood of confusion; preliminary injunction denied); *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (summary judgment of dismissal affirmed based in part on defendant's use of well-known house mark).

Both the Design and the Sock's product packaging (which concealed the triangle portion of the Design altogether) clearly indicated that the Sock was a Columbia product through the use of Columbia's distinctive trademark and logo and its registered OMNI-DRY® mark. Motley Dec., ¶ 8. Online consumers either purchased it from Columbia's own website – featuring Columbia's trademarks and logos and identifying Columbia as the source – or otherwise from an online retailer who clearly identified the Sock as a Columbia product. *Id.* ¶ 9.

Columbia owns numerous federal trademark registrations for its various trademarks and logos, many of which have obtained incontestable status. *Id.* ¶ 20. Columbia spends millions of dollars a year promoting the Columbia brand in the United States, including the Columbia trademark and logo appearing on the Sock and its product packaging. *Id.* ¶ 21. In 2010 alone, Columbia sold over $1.262 billion worth of products featuring the Columbia trademarks, and spent over $49.5 million in advertising and promoting products sold under the marks. *Id.* Columbia's trademarks and logos are both conceptually and commercially strong, such that they have developed a high level of consumer goodwill and recognition. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, No. 10-55840, 2011 U.S. App. LEXIS 4488, at *23-24 (9th Cir. Mar. 8, 2011). It is highly unlikely that a consumer purchasing a product featuring Columbia's trademarks and/or or logos – either online or in the traditional brick-and-mortar retail context – would be confused as to whether the product purchased originates from, is

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

associated with, or is sponsored by a source other than Columbia.  This factor weighs heavily in favor of Columbia.

        **ii.**      **GoldToe ignores the overall commercial impression created by the Design.**

Columbia's Design is distinctly different in appearance and commercial impression than the 3 Chevrons mark, when the marks are compared in their entireties.  The Design is comprised of all of the following elements: (1) two bands that loop around the heel and toe areas of the sock; (2) three large, equally-spaced, downward-pointing triangles inside a rectangular border covering nearly the entire the bridge of the foot; (3) Columbia's distinctive OMNI-DRY® house mark just above the toe; and (4) the famous Columbia logo, located on the calf portion of the Sock.  GoldToe's singular focus on the triangle portion of the Design, to the exclusion of the other elements of commercial impression, is contrary to applicable case law.

In *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005), the Ninth Circuit focused on the entirety of the marks rather than the shared term "Survivor," concluding that the defendant made a strong showing that confusion was unlikely because its mark was usually accompanied by a distinctive slogan.  *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000), affirmed the trial court's focus on such factors as style, symmetry, size of each element of the alleged design at issue (in addition to the fact that the defendant prominently featured its name and logo) in finding that the shell designs were dissimilar.  As in these cases, all the various design elements associated with the Socks must be considered by the Court.

GoldToe's design is comprised of three tightly compressed chevrons, with the bottom point of each chevron appearing to touch or nearly touch the chevron below.  This creates a single, unitary design.  By contrast, the triangle component of Columbia's Design is elongated, comprised of three much larger, equally spaced triangles appearing as three arrows pointing toward the toes.  Because of the triangles' spacing, to the average consumer the triangles in Columbia's Design do not appear to be part of a single unitary design, but rather as three separate design elements or three arrows within a rectangular design pointing prominently

RESPONSE MEMORANDUM IN OPPOSITION TO GOLDTOEMORETZ, LLC'S MOTION FOR PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

toward the toes.  Further, the sizes of the designs as they appear on the products are dramatically different – GoldToe's 3 Chevrons design is small when featured on GoldToe's sock products, whereas Columbia's Design covers the majority of the bridge of the foot, as shown below:




The 3 Chevrons design                    The Columbia Design

GoldToe relies heavily on *Adidas America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029 (D. Or. 2008).  Unlike *Adidas-America*, however, this is not a case involving a "knock-off" of a famous or well-known brand or product.  The defendant in *Adidas America* added an additional stripe to Adidas' commercially strong "three stripes" mark in order to appropriate Adidas' goodwill by selling a cheaper "knock-off" product.  *See id.* at 1051.  Here, Columbia, one of the largest and best known outerwear brands in the world, has not added an additional chevron to GoldToe's design in order to sell a "knock-off" product, but has innocently incorporated a dissimilar triangle feature as part of a larger design for a product targeted at a specialty market, with the product being sold at a higher price point than GoldToe's products.

### b.    GoldToe's design is a weak mark entitled to only a limited scope of protection.

The strength of a trademark is evaluated in terms of its conceptual strength and its

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

commercial strength.  *Network Automation, Inc.*, 2011 U.S. App. LEXIS 4488, at \*23-24.

Conceptual strength refers to whether a mark is inherently distinctive, as opposed to having

acquired distinctiveness over time.  *Id.*    Commercial strength refers to the extent to which

similar third-party marks are used in the marketplace, as well as whether the mark could be

considered as having acquired secondary meaning.  *See id.*

To the extent GoldToe asserts that its 3 Chevrons design consists of three triangles, it

cannot be considered inherently distinctive, as basic geometric and other common shapes are

weak marks under the law.  *See Brooks Mfg. Inc. v. Suave Shoe Corp.*, 716 F.2d 854, 858 (11th

Cir. 1983).[6] GoldToe argues that its 3 Chevrons design is an inherently distinctive mark, citing

*Adidas America* and *TM Computer Consulting, Inc. v. Apothacare, LLC*, CV-08-6267, 2008 U.S.

Dist. LEXIS 69284 (D. Or. Sept. 11, 2008).  Neither case supports GoldToe's position.  *TM*

*Computer Consulting* did not involve a geometric or common shape, and the discussion of

conceptual strength in *Adidas America* is dicta substantially based on an admission from defense

counsel and a showing of secondary meaning.

GoldToe further argues that its 3 Chevrons design is commercially strong, claiming that

the mark has acquired secondary meaning, in part relying on its federal registration, U.S.

Registration No. 2,954,083.  However, the case cited by GoldToe – *Entrepreneur Media, Inc. v.*

*Smith*, 279 F.3d 1135 (9th Cir. 2002) – stands for the proposition that only an *incontestable*

registration serves as conclusive proof of secondary meaning.  *Id.* at 1142 n.3.  GoldToe's

registration, U.S. Registration No. 2,954,083, has not obtained incontestable status.[7]

GoldToe's only evidence of secondary meaning is the self-serving and conclusory

---

[6] *See also Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 382-83 (2d Cir. 2005);
*Falcon Stainless, Inc. v. Rino Cos.*, No. SA CV 08-926, 2008 U.S. Dist. LEXIS 102442, \*20
(C.D. Cal. Dec. 9, 2008).

[7] For obvious strategy reasons, GoldToe submitted a Section 15 Declaration of
Incontestability to the U.S. PTO for its mark on May 24, 2011.  That Declaration has not been
accepted by the U.S. PTO as of this writing, and is unlikely to be accepted because it contains a
material misrepresentation, *i.e.*, it states that there is no pending proceeding involving GoldToe's
rights in its mark.  This action is just such a proceeding.

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981

statements in the Declaration of John M. Moretz regarding advertising expenditures, advertising and endorsements.  This submission does not satisfy the standards required by federal courts in finding that a mark has acquired secondary meaning.  *See Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999) (declaration testimony from defendant's founder and president insufficient to demonstrate secondary meaning).  For example, GoldToe has provided no samples of its advertising and promotional materials so that the Court may determine whether its advertising constitutes "image" advertising, *see, e.g., First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987), has provided no evidence as to the nature and extent of its advertising, *see, e.g., Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*, 685 F. Supp. 2d 1001, 1015 (N.D. Cal. 2009), and has otherwise provided no other evidence that a significant portion of consumers associate the 3 Chevrons design with a single source.  Nor has GoldToe produced a secondary meaning survey, which courts in the Ninth Circuit find most persuasive to show secondary meaning.  *See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989).

GoldToe has failed to demonstrate that its 3 Chevrons design has acquired secondary meaning, but even if it were able to do so, that would not transform the 3 Chevrons mark from a weak mark to a strong mark.  Courts agree that where a geometric or common shape is at issue, the marks remain weak notwithstanding a showing of secondary meaning.  *Star Indus., Inc.*, 412 F.3d at 382-83.  As a weak mark, the 3 Chevrons design is entitled to only a limited scope of protection and, accordingly, this factor weighs heavily in favor of Columbia.

### c.    GoldToe has no evidence of actual confusion.

GoldToe attempts to explain away its failure to prove actual confusion by arguing that the Socks were sold for a relatively short period of time.[8]  GoldToe Memo, p. 16.  However, the Socks were sold for at least one year prior to being voluntarily removed from the market by

---

[8] At least two of the cases cited by GoldToe in support of its argument are unreported cases issued prior to January 1, 2007, in violation of 9th Cir. R. 36-3.  All such cases cited by GoldToe should be ignored.

Page 17 -    RESPONSE MEMORANDUM IN OPPOSITION TO GOLDTOEMORETZ, LLC'S MOTION FOR PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

Columbia.  If, as GoldToe asserts, its mark is "strong," the designs at issue are "strikingly similar," the products are competitive and sold in overlapping trade channels, one would expect at least some evidence of actual confusion.  *See Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 768 (8th Cir. 2010) (coexistence for one year without actual confusion weighs in favor of defendant).  GoldToe concedes, however, that it is not aware of any instances of actual confusion.

### C.    The Balance of Equities Do Not Weigh in GoldToe's Favor.

The harm to be suffered by Columbia outweighs any harm to be suffered by GoldToe. Most obviously, Columbia has agreed to hold its current inventory pending the resolution of this dispute, and therefore any harm alleged by GoldToe is specious at best.  Motley Decl. ¶¶ 15, 19. That the equities do not favor GoldToe in this instance is further evidenced by GoldToe's weak showing on likelihood of confusion between the designs at issue.

GoldToe cites cases holding that alleged infringers assume the risk of such infringement. However, the cases cited by GoldToe – to the extent applicable to this case at all – all relate to the context of an intentional infringer.  *See, e.g., Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (copyright case; defendant was intentional infringer); *McNeil-PPC v. Granutec, Inc.*, 919 F. Supp. 198, 204 (E.D.N.C. 1995).  There was no such intent on the part of Columbia in this instance and therefore these cases are inapposite.

Although GoldToe is suffering no present harm, the entry of an injunction would be harmful to Columbia's goodwill and reputation among consumers and in the industry.  Motley Decl., ¶¶ 22-24.  As one of the world's largest designers and sellers of outerwear and outdoor apparel and accessories, Columbia prides itself on its novel and innovative designs and respect for third-party intellectual property rights.  *Id.* ¶ 22.  Further, a key part of Columbia's marketing strategy is to be on the cutting edge of outdoor apparel design and innovation.  *Id.* ¶ 23.

An injunction against Columbia in this instance would unjustifiably label Columbia as an infringer attempting to sell a "knock-off" product, thereby causing significant harm to

RESPONSE MEMORANDUM IN OPPOSITION TO GOLDTOEMORETZ, LLC'S MOTION FOR PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981

Columbia's goodwill and reputation among consumers and the positive image that has taken Columbia over 70 years and millions of dollars to build. *Id.* ¶ 23. This harm would negatively impact sales, in addition to third-party licensing arrangements that Columbia enters into from time to time for certain products. *Id.* ¶ 24. Columbia's licensing partners would be less willing to enter into licensing agreements to the extent the value of Columbia's brand has been diminished. *Id.* In comparison to the nonexistent harm to be suffered by GoldToe, the balance of the equities weighs in favor of Columbia.

###### D.    The Public Interest Does Not Weigh in Favor of Injunctive Relief.

GoldToe argues that the public has an interest in being protected from confusion. However, where the moving party has failed to demonstrate a likelihood of confusion – as is the case here – the public interest does not weigh in favor of injunctive relief. *See Int'l Jensen, Inc.*, 4 F.3d at 827. GoldToe has therefore failed to demonstrate that the public interest weighs in favor of injunctive relief.

### CONCLUSION

Preliminary injunctive relief is appropriate only when there is a danger that the plaintiff will suffer imminent and irreparable harm. Because Columbia has already agreed not to sell the accused products until this dispute can be adjudicated or settled, Gold Toe cannot show that it needs an injunction to stop the sale of the Socks. This Court should reject GoldToe's efforts to change the status quo and deny the injunction.

DATED:  June 2, 2011                    SCHWABE, WILLIAMSON & WYATT, P.C.

By: /s/ Michael A. Cohen
    Michael A. Cohen, OSB #965776
    E-mail:  mcohen@schwabe.com
    Matthew R. Wilmot, OSB #061936
    E-mail:  mwilmot@schwabe.com

    Attorneys for Plaintiff/Counter-Defendant
    Columbia Sportswear Company and Plaintiffs
    Columbia Sportswear North America, Inc., and
    Columbia Sportswear USA Corporation

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981